**WO**

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF ARIZONA

| | |
|---|---|
| Audrey Kennedy, ) <br> ) <br> Plaintiff, ) <br> ) <br> vs. ) <br> ) <br> Michael J. Astrue, Commissioner of the ) <br> Social Security Administration, ) <br> ) <br> Defendant. ) <br> ) | No. CIV 07-236-TUC-JMR (GEE) <br><br> **REPORT AND RECOMMENDATION** |

The plaintiff filed this action for review of the final decision of the Commissioner for Social Security pursuant to 42 U.S.C. §1383(c)(3). The case has been referred to the United States Magistrate Judge pursuant to the Rules of Practice of this court.

Pending before the court is a motion for summary judgment filed by the plaintiff on December 20, 2007, and a cross-motion for summary judgment filed by the defendant on January 22, 2008. [#14, 15][1] The plaintiff filed a reply on February 21, 2008.

The Magistrate Judge recommends that the District Court, after its independent review, grant the plaintiff's motion for summary judgment, deny the defendant's cross-motion, and remand for payment of benefits. The ALJ's conclusion that Kennedy can return to work as a call center operator is not supported by the record.

---

[1] Clerk's record number.

PROCEDURAL HISTORY

In November of 2004, Kennedy filed an application for supplemental security income benefits alleging disability due to "neuropathy, diabetes, amputation of right leg." (Tr. 126, 133).

The Social Security Administration (SSA) denied her application initially and again upon reconsideration. (Tr. 52-55, 58-61). Kennedy requested review and on March 1, 2006, appeared with counsel at a hearing before Administrative Law Judge (ALJ) Milan M. Dostal. (Tr. 23). The ALJ found Kennedy was not disabled. (Tr. 20-22, 23-29). Kennedy appealed, but the Appeals Council denied review making the decision of the ALJ the final decision of the Commissioner. (Tr. 4-7); 20 C.F.R. § 416.1481.

Kennedy then filed the instant complaint in U.S. District Court appealing the Commissioner's final decision. She filed the instant motion for summary judgment on December 20, 2007. [#14]   The Commissioner filed the instant cross-motion for summary judgment on January 22, 2008.   [# 15]  Kennedy filed a combined response and reply on February 21, 2008.

Claimant's Work History and Medical History

Kennedy had an above-the-knee amputation of her right leg when she was seven years old. (Tr. 295-96). She walks with the aid of a prosthesis. (Tr. 296). In the 1990s, Kennedy worked as an apartment house assistant manager, a call center operator and a gas station assistant manager. (Tr. 127). She stopped working in 1998. (Tr. 127).

In March of 2004, Kennedy suddenly began experiencing numbness and sharp, shooting pains in her leg and hands (Tr. 207, 299). She was examined in May of 2004 by a neurologist, Horace Noland, M.D. (Tr. 207-08). Noland ordered blood tests and nerve conduction studies. *Id.*

In June of 2004, Noland reported Kennedy was "doing better on Neurontin." (Tr. 206). Her "sharp, shooting pains" were "markedly reduced." *Id.* The "EMG nerve conduction study showed mild peripheral neuropathy." *Id.*

1    In October of 2004, Noland reported Kennedy was having good pain control with the
2  Neurontin but it caused her to "feel shaky." (Tr. 205). He prescribed Topamax to control these
3  side effects. *Id.*

4    In January of 2005, Tony E. Martin, C.P.O. (certified prostheticist/orthotisist), completed
5  a medical source statement. (Tr. 169-71). Martin opined Kennedy could occasionally lift less
6  than 10 pounds. *Id.* She could stand and/or walk for less than 2 hours in an 8 hour day. *Id.*
7  She had no limitations on sitting, but she must be able to alternate between standing and sitting
8  once an hour. *Id.* She should never climb, stoop, kneel, crouch, or crawl. *Id.*

9    In February of 2005, Robert Estes, a non-examining state agency physician reviewed the
10 medical records and completed a residual functional capacity assessment. (Tr. 155-62). He
11 opined Kennedy could lift 10 lbs. occasionally and less than 10 lbs. frequently. *Id.* She could
12 stand or walk for at least 2 hours per day and could sit for about 6 hours per day. *Id.* She
13 should only occasionally climb, stoop, kneel, crouch, or crawl. *Id.* She should avoid
14 concentrated exposure to extreme cold, vibration, and hazards such as machinery or height. *Id.*

15   In June of 2005, a second non-examining state agency physician, John Fahlbert, M.D.,
16 reviewed the medical records and completed a second residual functional capacity assessment
17 (Tr. 40, 140-47). He opined Kennedy could lift 10 lbs. occasionally and 10 lbs. frequently. *Id.*
18 She could stand or walk for at least 2 hours per day and could sit for about 6 hours per day. *Id.*
19 She should only occasionally climb, stoop, kneel, crouch, or crawl. *Id.* She should avoid
20 concentrated exposure to extreme cold, vibration, and hazards such as machinery or height. *Id.*

21   In February of 2006, Kennedy's primary care physician, Christine Donnelly, M.D.,
22 completed a residual functional capacity report. (Tr. 234). She reported Kennedy can lift or
23 carry "less than 10 lbs." *Id.* She can stand, sit or walk for "less than 2 hours" during an 8-hour
24 day. *Id.* She "needs frequent positional changes due to back and leg pain." *Id.* She "cannot
25 use [her] hands for prolonged periods of time [due to] neuropathy." *Id.*

26   Also in February, Donnelly wrote a summary of Kennedy's physical condition in which
27 she stated as follows: "Ms. Kennedy suffers from a myriad of medical disorders including
28 osteoarthritis, hypertension, hyperlipidemia, severe carpal tunnel syndrome and peripheral

neuropathy." (Tr. 274). "She is on a number of prescription medications for these conditions." *Id.* "Ms. Kennedy does experience some sedation and trouble with concentration and completing tasks due to her medications." *Id.* "Due to her current medical problems including the carpal tunnel and peripheral neuropathy, and due to side effects of her medications, I would have to say Ms. Kennedy [is] currently unfit for work either part-time or full time." *Id.* This report was submitted to the Appeals Council by Kennedy's attorney. (Tr. 254).

On March 1, 2006, Kennedy appeared with counsel at a hearing before Administrative Law Judge (ALJ) Milan M. Dostal. (Tr. 23). She testified she is unable to work due to nerve pain in her hands, legs, left foot and ankle. (Tr. 295). In addition, her medications have caused her to gain weight, which affects her stamina. (Tr. 296-97). She weighs 190 pounds – 40 pounds over her ideal weight. (Tr. 296).

In August of 2006, Kennedy was again examined by her neurologist, Noland. (Tr. 269). Noland noted "mild weakness of the dorsal interosseous muscles in the hands from decreased sensation in the hands, areflexia." *Id.* She was "getting around okay with her prosthesis." *Id.* He summarized her ability to work as follows: "[h]er neuropathy is severe and she has trouble using her hands and, in my opinion, she is totally disabled for her job as a keyboard operator." *Id.* This report was submitted to the Appeals Council by Kennedy's attorney. (Tr. 254).

## CLAIM EVALUATION

Social Security Administration (SSA) regulations require that disability claims be evaluated pursuant to a five-step sequential process. 20 C.F.R. §§ 404.1520, 416.920; *Baxter v. Sullivan,* 923 F.2d 1391, 1395 (9th Cir. 1991). The first step requires a determination of whether the claimant is engaged in substantial gainful activity. 20 C.F.R. §§ 404.1520(a)(4), 416.920(a)(4). If so, then the claimant is not disabled, and benefits are denied. *Id.* If the claimant is not engaged in substantial gainful activity, the ALJ proceeds to step two which requires a determination of whether the claimant has a "medically severe impairment or combination of impairments." 20 C.F.R. §§ 404.1520(a)(4), 416.920(a)(4).

In making a determination at step two, the ALJ uses medical evidence to consider whether the claimant's impairment more than minimally limits or restricts his or her "physical or mental ability to do basic work activities." *Id*. If the ALJ concludes the impairment is not severe, the claim is denied. *Id*. Upon a finding of severity, the ALJ proceeds to step three which requires a determination of whether the impairment meets or equals one of several listed impairments that the Commissioner acknowledges are so severe as to preclude substantial gainful activity. 20 C.F.R. §§ 404.1520(a)(4), 416.920(a)(4); 20 C.F.R. Pt. 404, Subpt. P, App.1. If the claimant's impairment meets or equals one of the listed impairments, then the claimant is presumed to be disabled, and no further inquiry is necessary. *Ramirez v Shalala,* 8 F.3d 1449, 1452 (9th Cir. 1993). If the claimant's impairment does not meet or equal a listed impairment, evaluation proceeds to the next step.

The fourth step requires the ALJ to consider whether the claimant has sufficient residual functional capacity[2] (RFC) to perform past work. 20 C.F.R. §§ 404.1520(a)(4), 416.920(a)(4). If the ALJ concludes the claimant has sufficient RFC, then the claim is denied. *Id*. If the claimant cannot perform any past work, then the ALJ must move to the fifth step which requires consideration of the claimant's RFC to perform other substantial gainful work in the national economy in view of claimant's age, education and work experience. 20 C.F.R. §§ 404.1520(a)(4); 416.920(a)(4).

The ALJ's Findings

At step one of the disability analysis, the ALJ found Kennedy "has not engaged in substantial gainful activity at any time relevant to this decision." (Tr. 25). At step two, he found Kennedy had severe impairments: "status post left above the knee amputation (remote)

---

[2] Residual functional capacity is defined as that which an individual can still do despite his or her limitations. 20 C.F.R. §§ 404.1545, 416.945.

- 5 -

1 with prosthesis; obesity; and peripheral neuropathy." *Id.* At step three, the ALJ found
2 Kennedy's impairments did not meet or equal the criteria for any impairment found in the
3 Listing of Impairments, Appendix 1, Subpart P, of 20 C.F.R., Part 404. *Id.* The ALJ then
4 analyzed Kennedy's residual functional capacity (RFC). (Tr. 25-26). He found she "has the
5 residual functional capacity to perform work at the sedentary exertional level." *Id.* At step
6 four, the ALJ found Kennedy could perform her past relevant work as a telephone call operator.
7 (Tr. 28).

## STANDARD OF REVIEW

An individual is entitled to disability benefits if he or she demonstrates, through medically acceptable clinical or laboratory standards, an inability to engage in substantial gainful activity due to a physical or mental impairment that can be expected to last for a continuous period of at least twelve months. 42 U.S.C. §§ 423(d)(1)(A), 1382c(a)(3)(A). "[A] claimant will be found disabled only if the impairment is so severe that, considering age, education, and work experience, that person cannot engage in any other kind of substantial gainful work which exists in the national economy." *Penny v. Sullivan,* 2 F.3d 953, 956 (9th Cir. 1993) (*quoting Marcia v. Sullivan,* 900 F.2d 172, 174 (9th Cir. 1990)).

To establish a *prima facie* case of disability, the claimant must demonstrate an inability to perform his or her former work. *Gallant v. Heckler*, 753 F.2d 1450, 1452 (9th Cir. 1984). Once the claimant meets that burden, the Commissioner must come forward with substantial evidence establishing the claimant is not disabled. *Fife v. Heckler*, 767 F.2d 1427, 1429 (9th Cir. 1985).

The findings of the Commissioner are meant to be conclusive. 42 U.S.C. §§ 405(g), 1383(c)(3). The court may overturn the decision to deny benefits "only if it is not supported by substantial evidence or it is based on legal error." *Matney v. Sullivan,* 981 F.2d 1016, 1019 (9th Cir. 1992) (citations omitted). The Commissioner's determination that a claimant is not disabled must be upheld if the Commissioner applied the proper legal standards and the record as a whole contains substantial evidence to support the decision. *Clem v. Sullivan*, 894 F.2d

328, 330 (9th Cir. 1990) (citing *Desrosiers v. Secretary*, 846 F.2d 573, 575-76 (9th Cir. 1988); *Delgado v. Heckler*, 722 F.2d 570, 572 (9th Cir. 1983)). Substantial evidence is defined as "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Richardson v. Perales*, 402 U.S. 389, 401 (1971) (citation omitted); *Winans v. Bowen,* 853 F.2d 643, 644 (9th Cir. 1987). The standard is less than a "preponderance of the evidence" standard. *Matney,* 981 F.2d at 1019.

"[I]f the evidence can support either outcome, the court may not substitute its judgment for that of the ALJ." *Matney,* 981 F.2d at 1019 (citing *Richardson,* 402 U.S. at 400). When applying the substantial evidence standard, however, the court should not mechanically accept the Commissioner's findings but should review the record critically and thoroughly. *Day v. Weinberger*, 522 F.2d 1154, 1156 (9th Cir. 1975). Reviewing courts must consider the evidence that supports as well as detracts from the Commissioner's conclusion. *Id.* A denial of benefits will be set aside if the Commissioner fails to apply proper legal standards in weighing the evidence even though the findings may be supported by substantial evidence. *Frost v. Barnhart*, 314 F.3d 359, 367 (9th Cir. 2002); *Benitez v. Califano*, 573 F.2d 653, 655 (9th Cir. 1978).

In evaluating evidence to determine whether a claimant is disabled, the opinion of a treating physician is entitled to great weight. *Ramirez v. Shalala,* 8 F.3d 1449, 1453-54 (9th Cir. 1993). The Commissioner may reject a treating physician's uncontradicted opinion only if he sets forth clear and convincing reasons for doing so. *Lester v. Chater*, 81 F.3d 821, 830 (9th Cir. 1995); *Magallanes v. Bowen,* 881 F.2d 747, 751 (9th Cir. 1989). If the treating physician's opinion is contradicted by another doctor, the Commissioner may reject that opinion only if he provides specific and legitimate reasons supported by substantial evidence in the record. *Lester,* 81 F.3d at 830. No distinction is drawn "between a medical opinion as to a physical condition and a medical opinion on the ultimate issue of disability." *Rodriguez v. Bowen*, 876 F.2d 759, 761 n.7 (9th Cir. 1989).

"The opinion of an examining physician is, in turn, entitled to greater weight than the opinion of a non[-]examining physician." *Lester v. Chater*, 81 F.3d 821, 830 (9th Cir. 1996).

1 "[T]he Commissioner must provide 'clear and convincing' reasons for rejecting the
2 uncontradicted opinion of an examining physician." *Id.* "[T]he opinion of an examining doctor,
3 even if contradicted by another doctor, can only be rejected for specific and legitimate reasons
4 that are supported by substantial evidence in the record." *Id.* at 830-31.

5 "Where medical reports are inconclusive, questions of credibility and resolution of
6 conflicts in the testimony are functions solely of the [Commissioner]." *Magallanes,* 881 F.2d
7 at 751 (punctuation omitted). The Commissioner's finding that a claimant is less than credible,
8 however, must have some support in the record. *See Light v. Social Security Administration,*
9 119 F.3d 789 (9th Cir. 1997).

10 The ALJ need not accept the claimant's subjective testimony of disability, but if he
11 decides to reject it, "[he] must provide specific, cogent reasons for the disbelief." *Lester,* 81
12 F.3d at 834. "Unless there is affirmative evidence showing that the claimant is malingering, the
13 Commissioner's reasons for rejecting the claimant's testimony must be clear and convincing."
14 *Id.* "General findings are insufficient; rather, the ALJ must identify what testimony is not
15 credible and what evidence undermines the claimant's complaints." *Id.*

17 DISCUSSION

18 The decision of the ALJ must be set aside. He failed to give appropriate weight to the
19 opinions of Kennedy's treating physicians, Donnelly and Noland.

20 Both physicians believe Kennedy is unable to perform her previous work as a telephone
21 call operator. (Tr. 269, 274). ALJ, however, relied on the opinions of the non-examining
22 disability determination physicians in concluding Kennedy is capable of performing sedentary
23 work. (Tr. 140-47, 155-62).

24 "Because treating physicians are employed to cure and thus have a greater opportunity
25 to know and observe the patient as an individual, their opinions are given greater weight than
26 the opinions of other physicians." *Smolen v. Chater*, 80 F.3d 1273, 1285 (9th Cir.1996). Here,
27 Nolan and Donnelly conclude Kennedy is unable to perform her past relevant work. (Tr. 269,
28 274). Their opinions are contradicted by the non-examining state agency physicians who

apparently believe Kennedy can perform sedentary work. (Tr. 140-47, 155-62). If the treating physician's opinion is contradicted by another doctor, the ALJ may reject that opinion only if he provides specific and legitimate reasons supported by substantial evidence in the record. *Lester,* 81 F.3d at 830. This he did not do.[3]

In his decision, the ALJ noted that "[t]he primary provider opined that the claimant was limited to less than sedentary work activity with an inability to use her hands for prolonged periods as well as the need for frequent positional changes due to back and leg pain." (Tr. 28). The ALJ did not provide a citation here, but he was apparently discussing Donnelly's Residual Functional Capacity statement. (Tr. 234). He discounted her opinion largely because "there is no substantiation for such severe restriction in the treatment records. . . ." (Tr. 28).

It is not entirely clear what the ALJ meant by this statement. The medical record contains numerous references to Kennedy's neuropathy. (Tr. 205 - 08, 269, 299). She takes a number of prescription medications to ameliorate her symptoms. (Tr. 274). While these medications reduce her pain, they also cause significant side effects such as "sedation, difficulty concentrating, dizziness and blurred vision." *Id.* The medical record contains adequate substantiation for Donnelly's opinion of disability.

The ALJ also found there was no support in the record for Donnelly's statement that Kennedy experienced back pain. It is true, there is little in the record describing Kennedy's back pain in isolation. Nevertheless, the record does supports Donnelly's opinion as it relates to Kennedy's work restrictions.

---

[3] When the ALJ made his decision, he had access to Donnelly's Residual Functional Capacity statement. (Tr. 234). He did not have Donnelly's letter summarizing Kennedy's condition and discussing her ability to work. (Tr. 274). He also did not have Noland's assessment of Kennedy's ability to work. (Tr. 269). It is therefore understandable that ALJ did not discuss these documents in his decision. These documents, however, were submitted to the Appeal's Council, which concluded they would not materially affect the decision of the ALJ. *See* (Tr. 4). Accordingly, this court must analyze the decision of the ALJ as though he had access to the entire amended record. *See Lingenfelter v. Astrue,* 504 F.3d 1028, 1030 n.2 (9th Cir. 2007).

In her residual functional capacity evaluation, Donnelly opined Kennedy "needs frequent positional changes due to back and leg pain." (Tr. 234). There is no specific reference in the record to Kennedy's back pain, but Martin, the prosthesis technician, similarly opined that Kennedy needed to alternate between standing and sitting. (Tr. 169-71). Donnelly's reference to back and leg pain here may have been a comment on how her obesity affects her ability to ambulate with her prosthesis. There are ample references in the record describing Donnelly's obesity and its effect on her locomotion. (Tr. 174, 197, 203, 296, 297, 298).

The ALJ also noted that Kennedy's neuropathy was "classified as mild." (Tr. 28). The ALJ was apparently commenting on the nerve conduction studies performed by Noland. (Tr. 218). Noland concluded from his studies that Kennedy displayed "[m]ild sensory neuropathy." *Id.* The ALJ apparently assumed that if Kennedy's neuropathy was "classified as mild" she should be able to perform sedentary work. This assumption was incorrect.

"The amount of pain caused by a given physical impairment can vary greatly from individual to individual." *Smolen*, 80 F.3d at 1282. While some might be able to perform sedentary work in spite of their "mild" neuropathy, Kennedy apparently cannot. Noland assessed Kennedy's ability to work as follows: "Her neuropathy is severe and she has trouble using her hands and, in my opinion, she is totally disabled for her job as a keyboard operator." (Tr. 269). As a treating physician, Noland was able to observe firsthand the severity of Kennedy's symptoms. As a specialist in neurology, Noland was the most qualified of all the physicians[4] to opine as to whether or not a diagnosis of "[m]ild sensory neuropathy" is inconsistent with a claim of disability. *See Smolen*, 80 F.3d at 1285 ("[T]he opinions of a specialist about medical issues related to his or her area of specialization are given more weight than the opinions of a nonspecialist."). Clearly, Noland did not believe Kennedy's symptoms were inconsistent with her diagnosis. The ALJ's assumption to the contrary is not supported by the medical record. *See Day v. Weinberger*, 522 F.2d 1154, 1156 (9th Cir.1975) (While the

---

[4] Fahlberg's specialty is classified as "family and general practice." (Tr. 40). Estes is an opthalmologist. (Tr. 41); *See* Social Security Disability Claims: Practice and Procedure, § 25:12.1 (Fahlberg is specialist code 12; Estes is specialist code 28).

- 10 -

1  ALJ is a legal expert in disability matters, he is not a medical expert.); *Dixon v. Massanari*, 270
2  F.3d 1171, 1177-78 (7th Cir. 2001).

3　　　　　The ALJ also remarked that Kennedy reported a "marked improvement in symptoms
4  with medication." (Tr. 28). While this is true, the fact that her symptoms have improved does
5  not mean they have improved to the point that she is now able to work. Moreover, Donnelly
6  notes that Kennedy's medications cause significant side effects that interfere with her ability
7  to work. (Tr. 274). The fact that Kennedy's medications have reduced her level of pain does
8  not mean she is able to perform sedentary work.

9　　　　　The ALJ also noted that Kennedy has "received little in the way of ongoing treatment
10 from specialists." (Tr. 28). However, nothing in the record indicates that, once her physicians
11 have settled on a particular regimen of medication, there is anything to be gained by "ongoing
12 treatment." *Id.*

13　　　　　Finally, the ALJ asserts the "records document little in the way of complaints of pain or
14 other typical symptoms of neuropathy." (Tr. 28). It is not entirely clear what the ALJ means
15 by this statement. The record does document Kennedy's complaints of pain. As to the phrase
16 "other typical symptoms of neuropathy," apparently the ALJ believes Kennedy should be
17 displaying symptoms such as weight loss or muscle atrophy if her neuropathy were truly
18 disabling. *See* (Tr. 27). The ALJ, however, is not a medical expert and should refrain from
19 offering medical testimony. *See Day v. Weinberger*, 522 F.2d 1154, 1156 (9th Cir.1975); *Dixon
20 v. Massanari*, 270 F.3d 1171, 1177-78 (7th Cir. 2001). If he believed this was a legitimate issue,
21 he could have supplemented the record. He did not do so.

22　　　　　In his response, the Commissioner argues it is sometimes proper for the ALJ to question
23 a claimant's testimony of disabling pain where the claimant does not display symptoms such
24 as muscle atrophy citing *Meanel v. Apfel*, 172 F.3d 1111, 1114 (9th Cir. 1999). In that case, the
25 ALJ noted that muscular atrophy should have been present where the claimant "testified that
26 she experienced constant pain that required her to lie in a fetal position all day . . . ." *See
27 Meanel v. Apfel*, 172 F.3d 1111, 1114 (9th Cir. 1999). Kennedy, however, made no such claim.
28

- 11 -

1   Moreover, Kennedy testified at the hearing that weight *gain* is a side effect of her
2 medications. (Tr. 296). Accordingly, it would not be surprising if she did not display weight
3 loss even if this were an expected symptom of disabling neuropathy.

4   The ALJ failed to give appropriate weight to the opinions of Kennedy's treating
5 physicians, Donnelly and Noland. "Where the Commissioner fails to provide adequate reasons
6 for rejecting the opinion of a treating or examining physician, we credit that opinion as a matter
7 of law." *Lester v. Chater*, 81 F.3d 821, 834 (9th Cir.1996). "Where we conclude that a
8 claimant's testimony or a doctor's opinion should have been credited and, if credited, would
9 have led to a finding of eligibility, we may order the payment of benefits." *Regennitter v.*
10 *Commissioner*, 166 F.3d 1294, 1300 (9th Cir.1999); *See also Pitzer v. Sullivan*, 908 F.2d 502,
11 506 (9th Cir.1990) (remanding for payment of benefits where the Secretary did not provide
12 adequate reasons for disregarding examining physician's opinion); *Rodriguez v. Bowen*, 876
13 F.2d 759, 763 (9th Cir.1989); *Winans v. Bowen*, 853 F.2d 643, 647 (9th Cir.1988).

14   In this case, the ALJ improperly discounted the opinions of Kennedy's treating
15 physicians. Their opinions should be credited as a matter of law. Crediting this evidence
16 indicates Kennedy has been disabled since May 13, 2004. *See* (Tr. 127); *Loza v. Apfel*, 219
17 F.3d 378, 394 (5th Cir.2000) ("Factors relevant to the determination of the date of disability
18 include the individual's declaration of the date of when the disability began, work history and
19 available medical history."); *Swanson v. Secretary*, 763 F.2d 1061, 1066 n.2 (9th Cir.1985) (The
20 claimant's onset date should be adopted by the Commissioner if it is consistent with the
21 available evidence citing Social Security Ruling 83-20.); *Willbanks v. Secretary*, 847 F.2d 301,
22 304 (6th Cir.1988) (same). Remand of the case would serve no useful purpose. *See Benecke*
23 *v. Barnhart*, 379 F.3d 587, 595 (9th Cir.2004) ("Allowing the Commissioner to decide the issue
24 again would create an unfair 'heads we win; tails, let's play again' system of disability benefits
25 adjudication."); *Holohan v. Massanari* 246 F.3d 1195, 1210 (9th Cir. 2001); *Smolen v. Chater*,
26 80 F.3d 1273, 1292 (9th Cir.1996) ("We may direct an award of benefits where the record has
27 been fully developed and where further administrative proceedings would serve no useful
28 purpose."); *See also* SSR 96-2p ("If a treating source's medical opinion is well-supported and

1 not inconsistent with the other substantial evidence in the case record, it must be given
2 controlling weight; i.e. it must be adopted."). A finding of disability should be entered.

RECOMMENDATION

For the foregoing reasons, the Magistrate Judge recommends that the District Court, after its independent review, grant the plaintiff's Motion for Summary Judgment, deny the defendant's Motion for Summary Judgment, and remand for payment of benefits. [#14, 15]

Pursuant to 28 U.S.C. § 636(b), any party may file and serve written objections within 10 days after being served with a copy of this Report and Recommendation. If objections are not timely filed, the party's right to de novo review may be waived. *See United States v. Reyna-Tapia*, 328 F.3d 1114, 1121 (9th Cir. 2003) (en banc), *cert. denied*, 540 U.S. 900 (2003).

The Clerk of the Court is directed to send a copy of this Report and Recommendation to all parties.

DATED this 28th day of March, 2008.

_____
Glenda E. Edmonds
United States Magistrate Judge